IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| GLENN H. GIBO, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 07-00627 HG LEK |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| DEPARTMENT OF ENVIRONMENTAL | ) | |
| SERVICES; JOHN DOES 1-20; DOE | ) | |
| ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, a 55 year old collection systems employee, brings an age discrimination and retaliation case against Defendant, the City and County of Honolulu, Department of Environmental Services.  Plaintiff alleges Defendant discriminated against him when Plaintiff was not selected for the position of Wastewater Collection System Supervisor I with the Department of Environmental Services.

Defendants move for summary judgment, asserting that Plaintiff's federal claims are untimely, and that Plaintiff did not engage in a protected activity that would form the basis of a retaliation claim.

For the reasons set forth below, Defendant's Motion for Summary Judgment is DENIED.

## PROCEDURAL HISTORY

On December 31, 2007, Plaintiff filed a Complaint.  (Doc. 1.)

On September 24, 2008, Defendant City and County of Honolulu filed a Motion for Summary Judgment, (Doc. 17), and Separate Concise Statement of Facts in support.  (Doc. 18.)

On September 26, 2008, Defendant City and County of Honolulu filed an Errata to the Separate Concise Statement of Facts in support.  (Doc. 20.)

On October 25, 2008, Plaintiff filed an Opposition, (Doc. 23), to the motion for summary judgment, and a document entitled "Concise Statement In Reply To Defendant's Concise Statement," (Doc. 24).

On November 5, 2008, the Court issued an Order Striking Plaintiff's Opposition, (Doc. 23), and Concise Statement In Reply, (Doc. 24), and requiring Plaintiff to file an opposition and separate concise statement of facts on or before November 10, 2008.  (Doc. 25.)

On November 10, 2008, Plaintiff filed an Opposition to the motion for summary judgment, (Doc. 27), and a Separate Concise Statement Of Facts, (Doc. 28).

On November 13, 2008, Defendant filed a Reply.  (Doc. 29.)

The matter came for a hearing on November 21, 2008.  At the hearing, the Court DENIED Defendant's Motion for Summary

2

Judgment.  This order explains the basis for the denial of the motion.

## FACTS

### I.   THE SUPERVISOR POSITION

The dispute arises from Defendant's decision to not promote Plaintiff Glenn H. Gibo to the position of Wastewater Collection System Supervisor I ("Supervisor") when filling five Supervisor vacancies in December of 2005.

Plaintiff has been employed by the City and County of Honolulu, Department of Environmental Services ("City"), since 1977.  During Plaintiff's twenty-nine years of employment, he has served as a Collection System Helper, and, since 1983, as a Collection System Maintenance, WCS Repairer, WB-10.  (Pl. SCSF at 2, Doc. 28.)

In a letter dated December 6, 2005, the City informed Plaintiff that he had not been promoted to the position of Supervisor.  (Def. SCSF at 2, Doc. 18.)  Plaintiff contends that he was passed over for promotion because of his age.  Plaintiff asserts that the employees hired for the five vacant Supervisor positions are younger, less qualified, workers.  (Pl. SCSF at 2, Doc. 28.)

### II.   NOTIFICATION OF THE AGE DISCRIMINATION CLAIM

After receiving the December 6, 2005 letter, Plaintiff contends he notified the City regarding his age discrimination complaint, but that no action was ever taken despite assurances

that the matter would be investigated and a response given.  (Pl. SCSF at 3, Doc. 28.)

Plaintiff states in his separate concise statement of facts, and the City does not dispute, that Plaintiff telephoned Defendant's Director Eric Takamura sixteen times about the failure to promote him to the Supervisor position.  Plaintiff first telephoned Director Takamura on January 3, 2006.  On January 9, 2006, Director Takamura returned Plaintiff's initial telephone call and left a message.  On January 10, Director Takamura reached Plaintiff on the telephone.  (Pl. SCSF at 3, Doc. 28.)

During the January 10 telephone call, Plaintiff alleges he told Director Takamura that he believed he was not promoted because of his age.  Plaintiff contends Director Takamura told him that Director Takamura would ask questions about Plaintiff's claim and would call him back.  (Pl. SCSF at 3, Doc. 28.)  In his declaration, Director Takamura states that during the conversation, Plaintiff did not mention an age discrimination claim.  Director Takamura states that he did not promise to speak further with Plaintiff.  Director Takamura did tell Plaintiff that because he had no knowledge of the matter he "would need to confer with [Plaintiff's] division."  (Takamura Decl. at 2, Doc. 29.)

After the January 10 conversation, it is undisputed that Plaintiff tried numerous times to speak further with Director

4

Takamura by telephone, calling him on the following dates:
January 11, 12, 17, 23, 24, 25, 26, 27, 30, and 31, 2006; March 3
and 24, 2006; May 4, 8, and 10, 2006.  Plaintiff left messages
each time he telephoned Director Takamura.  (Pl. SCSF at 3, Doc.
28.)

Plaintiff also left messages for, and spoke with Director
Takamura's secretary Michelle on several more dates.  On January
31, March 3, and May 4, 2006, Plaintiff left messages for
Director Takamura with Michelle.  Plaintiff actually spoke with
Michelle four times, on June 22, in July, on August 16, and on
September 20, 2006.  In the first conversation in June, Plaintiff
told Michelle of his discrimination claim.  In July, Michelle
told Plaintiff that she would speak with Director Takamura and
call Plaintiff back.  During the August 16 conversation,
Plaintiff asked Michelle about the status of his age
discrimination complaint, and was told that she did not know the
status.  On September 20, 2006, Michelle told Plaintiff that she
would give Plaintiff's message to Director Takamura.  (Pl. SCSF
at 3, Doc. 28.)

On November 2, 2006 Plaintiff spoke with Deputy Director of
Human Resources Noel Ono.  Plaintiff informed Director Ono that
he had notified Director Takamura of his age discrimination
complaint.  Deputy Director Ono told Plaintiff he would set up a
meeting with Director Takamura.  A meeting was held in January
2007 with Deputy Director Ono, Deputy Director Ken Shimizu,

Carreen Kurihara, UPW Shop Steward Darryn Ng, UPW Shop Steward
Daniel Akana, and UPW Shop Steward John Chang.  Director Takamura
did not attend.  At the meeting, Plaintiff presented a hand
written document detailing his age discrimination claim.  Deputy
Director Ono told Plaintiff that his letter would be reviewed and
the City would follow up with Plaintiff.  (Age discrimination
letter, Compl. at 6-8, Doc. 1; Pl. SCSF at 3, Doc. 28.)  On May
3, 2007, Deputy Director Ono telephoned Plaintiff and told him
that the investigation was "out of their hands and Ken Shimizu
would handle it," and that Deputy Director Ono was waiting for a
response from Assistant Chief Lori Kahikina-Moniz.  (Pl. SCSF at
3, Doc. 28.)

## III.  **THE ALLEGED ACTS OF RETALIATION**

Plaintiff alleges that the City took action against him in
retaliation for his age discrimination complaint.  (Pl. SCSF at
3, Doc. 28.)  Plaintiff outlines a series of actions he alleges
are retaliatory.  On February 14, 2007, the City notified
Plaintiff that he was being investigated for possible abuse of
his allotted sick leave.  The City then required Plaintiff,
during a further evaluation period from March through August of
2007, to undergo a medical evaluation by the Medical Coroner to
verify each day of absence due to illness.  (Pl. SCSF at 3, Doc.
28.)

Plaintiff alleges that younger co-workers were offered
overtime work on the sewage spill into the Ala Wai canal.  From

March 24, 2006 through April 1, 2006 Plaintiff was not offered
overtime work despite being available.   (Pl. SCSF at 3, Doc.
28.)

Plaintiff states that on May 24, 2006 he was accused of
leaving work 28 minutes early.  On June 19, 2006 the City issued
Plaintiff a written reprimand and charged him with one hour of
leave without pay.  Plaintiff asserts the accusation was false,
and that the City reprimanded him despite the submission of
written statements by two other employees confirming he had
completed the full work day.

Defendant counters that all of the alleged acts, apart from
the sick leave investigation, were not the subject of a timely
EEOC action by Plaintiff.  (Reply at 5-6, Doc. 29.)  Defendant
distinguishes the sick leave investigation, as involving a group
of employees, and that Plaintiff was not singled out for
investigation.  (Reply at 7-8, Doc. 29.)

Plaintiff alleges he was constructively discharged by
Defendant on June 30, 2007.  (Compl. at 9, Doc. 1)  The City
contends Plaintiff resigned.  (Def. SCSF at 2, Doc. 18.)

## IV.  **THE EEOC CLAIMS AND THE COMPLAINT**

Plaintiff filed complaints for age discrimination and
retaliation with the Equal Employment Opportunity Commission
("EEOC") and the Hawaii Civil Rights Commission ("HCRC") on
October 10, 2007.  On October 25, 2007, the EEOC issued a right
to sue letter.  On December 6, 2007, the HCRC issued a right to

sue letter.  (Pl. SCSF at 4, Doc. 28.)  On December 31, 2007, Plaintiff filed the Complaint.

In the Complaint, Plaintiff brings an age discrimination claim under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-34, and Haw. Rev. St. § 378-2; and a claim for unlawful retaliation under 42 U.S.C. § 2000e and H.R.S. § 378-2.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material

fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the non-movant's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials.

Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing party rest on conclusory statements.  <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

**ANALYSIS**

## I.   <u>THE TIMELINESS OF THE AGE DISCRIMINATION CLAIM</u>

Plaintiff brings a claim pursuant to the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34. The ADEA was designed to eliminate arbitrary age discrimination in employment.  29 U.S.C. § 621(b).

Pursuant to the ADEA an aggrieved party must file a claim with the United States Equal Employment Opportunity Commission ("EEOC") within 300 days of the act of alleged discrimination, or within 180 days of the discriminatory action if the state involved has no agency authorized to investigate age discrimination.  29 U.S.C. §§ 626(d)(1), (d)(2), 633(b).  Both parties agree that because Hawaii has such an agency, the Hawaii Civil Rights Commission ("HCRC"), 300 days is the applicable filing limitations period in the case.  Plaintiff did file his charges of age discrimination and retaliation with the HCRC, triggering the 300-day time limit.

Plaintiff asserts that the act of alleged age discrimination took place on December 6, 2005, the date of the letter from the City notifying him he was not promoted to Supervisor.  According to Defendants, the 300-day time limit commenced on December 6,

10

2005 and expired on October 2, 2006, 300 days later.  It is
undisputed that Plaintiff did not file a charge with the EEOC
until October 10, 2007.  The Court must consider the undisputed
facts to determine if appropriate grounds exist to warrant
equitably tolling the EEOC filing deadline or equitably estopping
the City from asserting the EEOC filing deadline as a defense.

## II.  <u>EQUITABLE MODIFICATION OF THE LIMITATIONS PERIOD</u>

In an Age Discrimination in Employment Act ("ADEA") suit,
failure to file an EEOC charge within the prescribed 300-day
limitations period in section 626(d) is not a jurisdictional bar.
<u>Naton v. Bank Of California</u>, 649 F.2d 691, 696 (9th Cir. 1981).
The limitations period is subject to equitable modification.  <u>Id.</u>

The applicability of equitable modification was addressed by
the United States Supreme Court in the <u>Zipes</u> case.  <u>Zipes v.
Trans World Airlines, Inc.</u>, 455 U.S. 385 (1982).  The Supreme
Court held "that filing a timely charge of discrimination with
the EEOC is not a jurisdictional prerequisite to suit in federal
court, but a requirement that, like a statute of limitations, is
subject to waiver, estoppel, and equitable tolling."  <u>Id.</u> at 393.
The Supreme Court was analyzing the limitations provision of
Title VII, but based its reasoning in part on the legislative
history of the ADEA, which was modeled after Title VII.  <u>Id.</u> at
395 n. 11.  The House Conference Report on the 1978 revision of
the ADEA shows Congress intended the limitations period to be of
the nature of a statute of limitation, subject to equitable

11

modification, and not a jurisdictional prerequisite.  Id., citing H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess., 12, reprinted in 1978 U.S.Code Cong. & Ad.News 528, 534 ("The conferees agree that the 'charge' requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this Act.").  Similarly, in Boyd v. U.S. Postal Serv., 752 F.2d 410, 414 (9th Cir. 1985), the Ninth Circuit Court of Appeals held that "[a] timely filing of an EEOC charge is not a jurisdictional prerequisite to suit."  The ADEA filing deadline in the case is subject to equitable modification.

In setting out the supporting policy reasons for equitable modification of the limitations period, the Ninth Circuit Court of Appeals explained that the ADEA is to be liberally interpreted, and that the status of laymen should be considered:

> The ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment.  Additionally, strict compliance with section 626(d)(1)'s time limitation should not be required of laymen attempting to enforce their statutory rights.

Naton, 649 F.2d at 696, quoting Dartt v. Shell Oil Co., 539 F.2d 1256, 1260 (10th Cir. 1976), aff'd by equally divided court, 434 U.S. 99 (1977) (citations omitted).  The Naton Court stated that "harsh results may be avoided through equitable modification of the limitations period."  Id. at 696.  The relief being considered is equitable, and so the modification of the statutory

12

limitations provision is to be determined "on a case-by-case basis, depending on the equities in each case." Hageman v. Phillips Roxane Laboratories, Inc., 623 F.2d 1381, 1385-86 (C.A.Cal. 1980).

A.   **EQUITABLE ESTOPPEL**

The doctrine of equitable estoppel may be applicable when misleading conduct of the defendant has induced the plaintiff to delay filing an EEOC claim. See, e.g., Bonham v. Dresser Industries, Inc., 569 F.2d 187, 193 & n.6 (3rd Cir. 1977). The Tenth Circuit Court of Appeals in the Wilkerson case stated that the "action by an employer which misleads an employee and causes him to fail to file notice within 180 days of his discharge is also a factor to be considered in connection with equitable tolling or estoppel." Wilkerson v. Siegfried Ins. Agency, Inc., 621 F.2d 1042, 1045 (10th Cir. 1980).

A district court must rest a finding of estoppel on the consideration of several factors, including: (1) evidence of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations; (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct; and, (3) the extent to which the congressional purpose of the ADEA limitations period has been satisfied. See Cooper v. Bell, 628 F.2d 1208, 1214 (9th Cir. 1980); Dartt v. Shell Oil Co., 539 F.2d 1256, 1261 (10th Cir. 1976). The applicability of the

13

doctrine depends on a showing of wrongful conduct by the defendant that prevented the plaintiff from filing suit.  <u>Santa Maria v. Pacific Bell</u>, 202 F.3d 1170, 1176 (9th Cir. 2000).

Here, Plaintiff contends that the City is equitably estopped from asserting the 300-day limitations period because of his reliance on statements made by Director Takamura and his secretary Michelle that the City had been notified of his claim of discrimination and that the claim would be investigated.

The facts concerning the series of telephone calls made during the 300 day period stretching from December 6, 2005 to October 2, 2006 are central to the determination of equitable modification.  In the January 10, 2006 telephone conversation Plaintiff asserts that he notified Director Takamura that he believed he had not been promoted because of his age.  In his declaration Plaintiff indicates he relied on representations made by Director Takamura that his age discrimination claim would be investigated, and that Director Takamura would get back to Plaintiff about his claim.  In contrast, Director Takamura states he told Plaintiff he had no knowledge of the matter and "would need to confer with his division, Collection Systems Management ("CMS").  Director Takamura did not direct Plaintiff to contact someone else with his claim.  (Takamura Decl., Doc. 29-2.)

While the exact contents of the January 10 conversation is in dispute, the parties do not dispute that Plaintiff persisted in following up on his January 10 conversation with Director

14

Takamura, leaving 15 further messages with the Director alone.
It is also an undisputed fact that Plaintiff notified Director
Takamura's secretary Michelle of his age discrimination claim on
June 22, 2006, well before the October 2, 2006 limitations
deadline.  There is no opposing declaration by secretary Michelle
in the record, and Director Takamura's declaration is silent
regarding his failure to respond to the subsequent 15 messages.
(Takamura Decl., Doc. 29-2.)  The undisputed facts of the actual
notification as well as the repeated attempts at notification,
and the pattern of deliberate avoidance by Director Takamura,
support the conclusion that an estoppel argument applies.

The limitations period of the 300 day notice is meant, in
part, to ensure that the employer has early notice of a possible
law suit.  Giving the employer early notice promotes both the
preservation of evidence and good faith negotiating on the part
of the employer during the conciliation period.  Moses v.
Falstaff Brewing Co., 525 F.2d 92, 94 (8th Cir. 1975); Powell v.
Southwestern Bell Telephone Co., 494 F.2d 485, 488 (5th Cir.
1974) (ensuring early notice "would promote the good faith
negotiation of employers during the 60 day conciliation period
and provide an opportunity for preservation of evidence and
records for use at a trial necessitated by failure of
negotiation. ").

There is no dispute that the City learned of Plaintiff's age
discrimination claim at the very latest on June 22, 2006.  The

City does not argue any loss of evidence resulted from the tardy filing of the EEOC claim.  Plaintiff's unopposed statement concerning the numerous messages left for Director Takamura and his notification of Michelle of the age discrimination claim place the City in the position of having caused the loss of the opportunity for good faith negotiations during the conciliation period.

As the United States Supreme Court stated in the case of Glus, equitable estoppel is available so that "no man may take advantage of his own wrong."  Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 232-33 (1959).

**B.    Equitable Tolling**

Equitable tolling focuses on a plaintiff's excusable ignorance of the limitations period, on whether there was excusable delay by the plaintiff, and on lack of prejudice to the defendant.  See, e.g., Abbott v. Moore Business Forms, Inc., 439 F.Supp. 643, 646-49 (D.N.H. 1977).

Equitable tolling is permissible when the plaintiff employee's failure to timely file an EEOC claim is the result of either a "deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge."  Olson v. Mobil Oil Corporation, 904 F.2d 198, 201 (4th Cir. 1990)(quoting Price v. Litton Business Systems, Inc., 694 F.2d 963, 965 (4th Cir. 1982)).  The limitations period may be tolled "where the

complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990); <u>English v. Pabst Brewing Co.</u>, 828 F.2d 1047, 1049 (4th Cir.1987) (equitable tolling is based "primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time"). As the Fifth Circuit Court of Appeals explained in the case of <u>Coke</u>, "[p]erhaps in no circumstance is equitable tolling of a time limitation more justified than where a defendant, through misleading conduct, has induced a plaintiff to delay filing suit until the limitations period has run." <u>Coke v. General Adjustment Bureau, Inc.</u>, 616 F.2d 785, 790-91 (5th Cir. 1980).

It is true an employer's misbehavior does not excuse employees from the obligation to pursue their rights to the extent reasonably possible. <u>Irwin</u>, 498 U.S. at 96 (equitable tolling not appropriate "where the claimant failed to exercise due diligence in preserving his legal rights." ). Equitable tolling is appropriate, however, "where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction."

The appropriateness of the discretionary doctrine depends on the particular circumstances of the case. The Fifth Circuit Court of Appeals in <u>Fisher</u> explained that "[a]s a discretionary doctrine that turns on the facts and circumstances of a

17

particular case, equitable tolling does not lend itself to bright-line rules."  Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999).

The facts, viewed in the light most favorable to Plaintiff, show that there is no dispute of material fact.  The undisputed series of telephone calls by Plaintiff to Director Takamura that were not returned and the numerous calls to Takamura's secretary Michelle show a pattern of avoidance by Defendant during the critical 300 days.  Further, Plaintiff was not told until May 3, 2007 that Deputy Director Ken Shimizu and Assistant Chief Moniz were the correct contacts for an age discrimination claim.  The date of May 3, 2007 falls well after the end of the 300 day limitations period on October 2, 2006.

The City argues that equitable estoppel is inapplicable because Plaintiff had constructive knowledge of the EEOC filing requirements from the equal employment opportunity notices posted at Plaintiff's work site.  The City proffers the declaration of Florendo "Fuji" Juan in support.  (Decl. Juan, Doc. 29-4.)  In his declaration, however, Juan simply states that notices were "posted in our administration office at the Koula base-yard." (Id. at 2.)  The City does not proffer any evidence of what the notices contained.  No indication is provided to show if the critical information required pursuant to the ADEA and the relevant portions of the code of federal regulations were posted. Pursuant to 29 C.F.R. 1627.10, an EEOC posting must consist of a

"notice pertaining to the applicability of the Act prescribed by the [EEOC]."  The posted notice should advise employees of the existence of the ADEA and inform them of their need to obtain assistance in pursuing an age discrimination claim.  <u>Franci v. Avco Corp</u>, 460 F.Supp. 389 (D.C.Conn. 1978).  The notice must provide employees with a meaningful opportunity of becoming aware of their rights under the ADEA.  <u>Charlier v. S.C. Johnson & Son, Inc.</u>, 556 F.2d 761 (5th Cir. 1977), rehearing denied 559 F.2d 1217.  The Defendant does not proffer any evidence that the City's notice contained the vital information of the applicable limitations period, EEOC contact information, or directions as to the proper procedures for filing a claim.

The City knew of Plaintiff's many attempts to follow up on his age discrimination claim.  Plaintiff is entitled to equitable tolling.

**IV.  <u>RETALIATION</u>**

Section 623(d) of the ADEA makes it unlawful for an employer to retaliate against an employee for opposing "any practice made unlawful by [the ADEA], or because such [employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]."  29 U.S.C. § 623(d).

Plaintiff has alleged that the acts of investigating him for abuse of his allotted sick leave, reprimanding him for allegedly leaving work early, and failing to assign him overtime constitute

19

unlawful retaliation under the ADEA.

The City first contends that Plaintiff is unable to establish that any of the alleged acts were in retaliation for engaging in a protected activity.   The City defines the protected activity as Plaintiff's act of filing the EEOC claim.   The City argues that because the acts occurred before the EEOC October 10, 2007 filing date, they are not related to a protected activity within the meaning of the ADEA.   The Ninth Circuit Court of Appeals, in the case of <u>Passantino</u>[1], stated that informal complaints to an employer also constitute protected activity "such that actions taken against [the employee] after these initial complaints are appropriately the subject of [the] retaliation claim."   <u>Passantino v. Johnson & Johnson Consumer Products, Inc.</u>, 212 F.3d 493, 506 (9th Cir. 2000).   Here, Plaintiff alleges that his informal complaints to Director Takamoto resulted in retaliation.   (Pl. SCSF at 3, Doc. 28.)   The complaints for retaliation survive summary judgement. There must be a factual determination as to whether they  constitute retaliation for protected activity.

The doctrines of equitable tolling and equitable estoppel,

---

[1]In <u>Passantino</u>, the Ninth Circuit Court of Appeals analyzes a discrimination claim filed pursuant to Title VII.   When analyzing a claim of retaliation under the ADEA, courts look to case law under the ADEA and Title VII.   <u>See</u> <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 888 (9th Cir. 1994) ("We combine the Title VII and ADEA claims for analysis because the burdens of proof and persuasion are the same."); <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1441 (9th Cir. 1990).

discussed previously, are equally applicable to the acts of alleged retaliation as they are to the claim of age discrimination.

Defendant's Motion for Summary Judgement is DENIED.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion For Summary Judgment (Doc. 17).  The Court finds as a matter of law that the doctrines of equitable estoppel and equitable tolling are applicable to Plaintiff Glen H. Gibo's age discrimination and retaliation filings with the Equal Employment Opportunity Commission and the Hawaii Civil Rights Commission.

IT IS SO ORDERED.

DATED: December 9, 2008,  Honolulu, Hawaii.



   /s/ Helen Gillmor

Chief United States District Judge

GLENN H. GIBO v. CITY AND COUNTY OF HONOLULU, DEPARTMENT OF ENVIRONMENTAL SERVICES, et al, Civ. No. 07-00627 HG-LEK; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT